IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LYNRONDA M. WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:11CV717-SRW |
| ) | (WO) |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Lynronda M. Walker brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145

(11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46. (emphasis added).

## DISCUSSION

Plaintiff raises two allegations of error: (1) that the ALJ did not properly analyze her claim that she meets the requirements for presumptive disability under Listing 12.05(C)[1]; and (2) the ALJ erred in giving more weight to the testimony of the non-examining expert witness psychologist who testified at the hearing than to the opinion of the psychologist who performed the consultative examination in making his finding as to the plaintiff's residual functional capacity. Plaintiff urges the court to reverse the Commissioner's decision and award benefits. (Doc. # 11).[2]

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶ 12.05(C).

[2] Plaintiff's allegations of error relate to the ALJ's analysis of her mental impairment and resulting limitations. Thus, the court does not discuss the evidence of plaintiff's physical impairments. The ALJ found that plaintiff has "severe" physical impairments of "hypertension, obesity, degenerative joint disease of the lumbosacral spine, osteoarthritis of the knees, and venous

<u>The Psychologists' Opinions</u>.  On July 26, 2008, consultative psychologist Aleada Lee-Tarver, Ph.D., evaluated the plaintiff and administered IQ testing. She found the plaintiff to have a verbal IQ score of "61 $\pm$ 2," a performance IQ score of "70 $\pm$ 3," and a full scale IQ of "62 $\pm$ 2." (Exhibit 10F, R. 207).  Dr. Lee-Tarver concluded that "[t]est results and observations supported the assumption that [plaintiff's] current level of intellectual functioning was primarily within the mildly mentally retarded range, within an attained Full Scale IQ of 62 on this administration of the WAIS-III." (R. 209).  She diagnosed "Mild Mental Retardation." <u>Id</u>.  Dr. Lee-Tarver completed a medical source opinion form in which she concluded that plaintiff has "extreme limitations" in her ability to: (1) understand, remember, and carry out detailed or complex instructions; and (2) maintain attention, concentration or pace for periods of at least two hours.  She further concluded that plaintiff has "marked" limitations in her ability to: (1) understand, remember, and carry out simple, one and two-step instructions; (2) maintain social functioning; (3) maintain activities of daily living; (4) deal with changes in a routine work setting; and (5) use judgment in detailed or complex work-related decisions.  Dr. Lee-Tarver found that plaintiff is moderately limited in her ability to: (1) respond appropriately to supervisors, co-workers, and the general public; and (2) use judgment in simple one or two step work-related decisions.  (R. 210-11).

At the administrative hearing, the ALJ called psychologist Sydney Garner as an expert witness. (R. 306-30).  Garner testified that, in her opinion – based on her review of the record

---

insufficiency of the legs[,]" (R. 20) that limit her to sedentary work exertionally with additional non-exertional limitations (R. 32). Plaintiff's treatment history is summarized in the appendices filed by the parties.  (Doc. ## 15, 16).

3

in its entirety, including plaintiff's school records – plaintiff is functioning at a low borderline level rather than a mental retardation level and that her condition does not meet or equal Listing 12.05(C). (R. 307-09). Plaintiff's school records include the results of the Wechsler Intelligence Scale for Children ("WISC") testing administered to plaintiff in 1974, when she was twelve years old. On that occasion, testing yielded a verbal score of 70, a performance score of 86, and a full scale IQ score of 75. (Exhibit 5E, R. 131). Dr. Garner noted that these WISC scores are "significantly higher" than plaintiff's 2008 scores. (R. 309). She also pointed to plaintiff's history of work at semi-skilled employment as evidence of adaptive functioning above the range of mental retardation.[3] Id. As to plaintiff's ability to respond appropriately to supervisors, coworkers and members of the general public, Dr. Garner concluded – as Dr. Lee-Tarver had – that plaintiff has moderate limitations. (R. 312). She also agreed with Dr. Lee-Tarver's conclusion that plaintiff is markedly limited in her ability to use judgment in detailed or complex work-related decisions. (Id.). Dr. Garner found no "extreme" limitations. She concluded that plaintiff is moderately limited in her ability to: (1) deal with changes in a routine work setting; (2) maintain attention, concentration or pace for periods of at least two hours; and (3) maintain activities of daily

---

[3] Plaintiff worked from late 1978 through September 1992 as a sewing machine operator for Russell Corporation. In this job, she gathered sleeves and sewed them into the arms of T-shirts. (R. 99-100, 107-08, 118-19). She also worked as a nursing assistant between late 2001 and early 2002, and for a brief period in 2003. (R. 99-101, 107, 118, 120-22). The vocational expert testified that the sewing machine operator job, as plaintiff performed it, is semi-skilled (R. 346; see also R. 119); she further testified that whether plaintiff's nursing assistant jobs were also semi-skilled depends on whether plaintiff's duties included charting and taking vital signs (R. 344-45). Plaintiff testified at the hearing that she did not take vital signs. (R. 274). In her work history report, however, she indicated that she took vital signs and "file[d] daily charts on people" in these jobs (R. 120-21).

living. (R. 312-13). Dr. Garner testified that plaintiff has mild-to-moderate limitations in her ability to understand, carry out, remember simple, one-and-two step instructions and in her ability to use judgment in simple work-related decisions. (Id.).

<u>The ALJ's Conclusions</u>.  The ALJ's decision is convoluted and, in some respects, contradictory.  The court understands it to express the ALJ's overall conclusion that, while the IQ scores upon testing by Dr. Lee-Tarver "may possibly" represent the claimant's current intellectual functioning, the evidence of plaintiff's *adaptive* functioning – both during the developmental period and thereafter – demonstrates that she is functioning at a higher level than is reflected by the scores, *i.e.*, in the range of borderline intellectual functioning rather than mental retardation. (See R. 20 (finding plaintiff to have severe impairment of borderline intellectual functioning); R. 30, 37 (the IQ scores "may possibly be a valid measure of the claimant's ***current intellectual functioning***)(emphasis in original); R. 30 ("'[C]onversely, Mental Retardation ***would not be diagnosed*** in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning.'")(quoting DSM-IV-TR)(emphasis in ALJ opinion); R. 37 ("The longitudinal record indicates higher adaptive functioning during the developmental period and thereafter.").  Thus, the ALJ rejected the mental retardation diagnosis of Dr. Lee-Tarver and, instead, credited the opinion of the non-examining expert witness psychologist that plaintiff is functioning in the borderline range. (See R. 25-26).  Additionally, he rejected most of Dr. Lee-Tarver's conclusions expressed in the medical source opinion form, and concluded that plaintiff's degree of limitation in the mental work-related functions are as Dr. Garner found. (See R. 31-32, 210-11, 312-13).

5

Plaintiff's Contentions. Plaintiff contends that – due to the evidence of her WAIS-III scores in 2008 and her WISC scores in 1974, Dr. Lee-Tarver's diagnosis of mental retardation, and the ALJ's finding that plaintiff suffers multiple additional severe impairments – she satisfies the requirements for presumptive disability under Listing 12.05(C).[4] She argues that the ALJ erred in concluding otherwise because the testimony of the expert witness psychologist is not supported by substantial evidence and is not sufficient to contradict plaintiff's school records and the evidence from Dr. Lee-Tarver "– both evidence indicating that the plaintiff is mildly mentally retarded or educably mentally retarded with an IQ between 60 and 70, inclusive" (Doc. # 11, p. 8). She also maintains that the ALJ erred by failing to require Dr. Garner to demonstrate that she has a "working

---

[4] Plaintiff does not appear to contend that she establishes presumptive disability under Listing 12.05(C) merely by proof of an IQ between 60 and 70 and an additional severe impairment. She argues, instead, that she establishes presumptive disability by showing that "*she is mildly mentally retarded* with an IQ between 60 and 70, inclusive" and has an additional severe impairment. (Doc. # 11, p. 3 (emphasis added); see id. at pp. 5-6 (noting her WISC and WAIS-III scores and arguing, "*Based on the plaintiff's background and considering the deficits in adaptive behaviors initially manifested during the developmental period, Dr. Tarver diagnosed under AXIS-II of the DSM-IV, "mild mental retardation[."]* The record contains no other psychometric tests. Consequently, based on the testing administered to the plaintiff as a child and based on testing administered to the plaintiff as an adult *and based on the conclusions of the licensed clinical psychologist[] that administered the most recent psychometric testing*, the plaintiff is functioning intellectually in the mild range of mental retardation. She, therefore, satisfies the first requirement from presumptive disability under the 'Listing of Impairments' found in ¶ 12.05(C).")(citing R. 209)(emphases added); see also R. 321-22 (plaintiff's attorney's on-the-record discussion with the ALJ about the requirements of ¶ 12.05(C), agreeing with the ALJ that there are three elements to the first prong of the listing – *i.e.*, the "low number," the "adaptive functioning," and "before age 22" – and contending that it is satisfied with proof of the low IQ scores in 2008 and 1974 and an uncontroverted diagnosis of mild mental retardation, which necessarily includes the psychologist's determination of deficits in adaptive functioning); R. 323 (arguing that "if you had the score and if you have the diagnosis, then that necessarily follows that you have the deficits in adaptive functioning, period.").

knowledge of the case law of the Eleventh Circuit in order to testify, one way or the other, as to whether the plaintiff's evidence satisfies the presumptive disability requirements of the listing found in ¶ 12.05(C)." (Id., p. 9; see also pp. 7-8). Plaintiff further contends that the ALJ erred in relying on Dr. Garner's conclusions regarding plaintiff's degree of limitation rather than those expressed by Dr. Lee-Tarver in the medical source opinion form. (Id., pp. 10-14). She asserts that there is no evidence of record on which Dr. Garner could have relied to derive her opinion as to plaintiff's functional limitations and, therefore, that the ALJ erred in relying on it. (Id., pp. 13-14).

Listing 12.05C. For a claimant to be found disabled under any part of Listing 12.05, she must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" and, in addition, meet one of the four requirements described in subparagraphs A through D. See Listing 12.05 (introductory paragraph). Subparagraph C requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. at ¶ 12.05(C). An additional impairment that is "severe" as defined in 20 C.F.R. 416.920(c) satisfies the second prong of subsection (C). Here, the ALJ found plaintiff to suffer from "severe" physical impairments; he concluded, therefore, that plaintiff satisfies this element of the listing. (R. 20, 31). Thus, the dispute before the court concerns whether the ALJ's decision demonstrates that he conducted the proper legal analysis to determine whether plaintiff had: (1) "significantly subaverage general intellectual functioning with deficits in adaptive

functioning initially manifested during the developmental period" (¶ 12.05, introductory language); and (2) "a valid verbal, performance or full scale IQ of 60 through 70" (¶ 12.05(C)) and – if so – whether his findings on these two issues are supported by substantial evidence.

<u>Deficits in Adaptive Functioning Initially Manifested before Age 22</u>. "To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." <u>Harris v. Commissioner of Social Security</u>, 330 Fed. Appx. 813, 815 (11th Cir. 2009)(quoting <u>Crayton v. Callahan</u>, 120 F.3d 1217, 1219 (11th Cir. 1997)); <u>see also</u> <u>Jordan v. Commissioner of Social Sec. Admin.</u>, 470 Fed. Appx. 766, 768 (11th Cir. 2012)("As both the Listings and our cases make plain, a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05."). This requirement of the Commissioner's listing is derived from accepted diagnostic criteria for mental retardation. <u>See</u> 65 FR 50746, 50760 (August 20, 2000)("[W]e used the DSM-III-R as the basis for the diagnostic criteria in our mental disorders listings because this reference manual is widely used and accepted in the psychiatric and psychological communities."); <u>see also</u> American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed., text revision (2000)("DSM-IV-TR") at p. 41-43 ("essential feature" of mental retardation is significantly subaverage general intellectual functioning that is accompanied by deficits in

adaptive functioning).

Dr. Lee-Tarver evaluated the plaintiff and diagnosed "Mild Mental Retardation." (R. 209). Dr. Garner reviewed the record, including Dr. Tarver's report, and disagreed with this assessment. Dr. Garner testified that she did not see anything in Dr. Lee-Tarver's report to indicate that Dr. Lee-Tarver did not follow the standard clinical practice of taking deficits in adaptive functioning into account when diagnosing mental retardation. However, Dr. Garner's opinion – "[b]ased on [plaintiff's] employment history and her overall ad[a]ptive functioning" – is that plaintiff's "functioning ... is certainly higher than [her I.Q.] scores suggest." (R. 317-18). As noted above, Dr. Garner found plaintiff's history of semi-skilled employment to be significant. (R. 309; see supra, n. 4). She also pointed to plaintiff's "testing at her school during the longitudinal developmental period, that were higher, significantly higher. Verbal IQ 70, performance IQ 86 with a full scale IQ of 75." (R. 309; see also R. 131).[5] Plaintiff contends that the ALJ erred by giving more weight to Dr. Garner's opinion than to Dr. Lee-Tarver's. The Eleventh Circuit recently discussed how the ALJ must decide the weight to accord to a medical opinion, as follows:

> The ALJ must consider several factors in determining how much weight to give to each medical opinion, including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is

---

[5] In the report of testing included in plaintiff's school records, the examiner wrote, "The Full Scale score of 75 falls within the 'educably mentally retarded' range of intellectual functioning. The 16-point difference between the Verbal and Performance scores strongly suggests cu[l]tural/educational inadequacies, however, and indicate other factors at play than mental deficiency." (R. 131).

with the record as a whole"; and (5) the doctor's specialization. [20 C.F.R. § 404.1527(a)(2),] §§ 404.1527(c), 416.927(c). These factors apply to both examining and nonexamining doctors. Id. §§ 404.1527(e), 416.927(e). Upon considering medical opinions, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. Winschel [v. Commissioner of Social Security, 631 F.3d 1176, 1179 (11th Cir. 2011)].

\* \* \* \* \*

A treating physician's opinion must be given substantial or considerable weight unless "good cause" is shown to the contrary. Id.; see also 20 C.F.R. § 404.1527(c)(2) ("[g]enerally, we give more weight to opinions from your treating sources ..."). The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir.1987). In the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir.1985).

Denomme v. Commissioner, Social Security Administration, 2013 WL 2097364, \*\*1-2 (11th Cir. May 16, 2013); see also Wainwright v. Commissioner of Social Security Administration, 2007 WL 708971 (11th Cir. Mar. 9, 2007)(unpublished opinion)(opinion of physician who examined plaintiff only once was "not entitled to any special weight"). Here, the ALJ gave more weight to Dr. Garner's opinion because: (1) "her opinion is strongly supported by the evidentiary record and her impartial testimony was well reasoned and persuasive" (R. 36); (2) "she is the only mental health practitioner who had the opportunity to examine the entire medical evidentiary record" (id.); (3) she defended her opinion under oath (R. 36-37); (4) she had access to the claimant's school records, including her WISC scores, which were significantly higher than the scores reported by Dr. Lee-Tarver (id.); (5) her report is inconsistent in that she "states in some places of the report that the WAIS-III was administered to the claimant while in other places she states that the WISC-IV was

10

administered" (id.); (6) "under step three, an individual must have deficits in adaptive behavior initially manifested before age twenty-two" and "[t]he longitudinal record indicates higher adaptive functioning during the developmental period and thereafter" (id.); and (7) there is "a serious inconsistency" between Dr. Lee-Tarver's narrative report and the medical source opinion form she completed – the former noting plaintiff's "sustained attentiveness" during testing, while the latter indicates an "extreme degree of impairment of the ability to maintain attention, concentration or pace for at least two hours[.]" (id.).

The reasons identified as # 2 and # 5 above are not supported by substantial evidence of record. Dr. Lee-Tarver states that she, too, reviewed "the medical evidence of record provided by the DDS" and considered it in her overall assessment; the evidence post-dating her assessment had to do with plaintiff's physical ailments only. (R. 206; 212-33). Also, Dr. Lee-Tarver's sole reference to the WISC-IV in her report appears to be a typographical error – as the ALJ himself concluded – rather than a substantive "inconsistency." (See R. 206-09; R. 22 n.3). However, the other reasons stated by the ALJ are sufficient to support his decision to give more weight to the opinion of Dr. Garner. In particular, the ALJ cites the inconsistency between Dr. Lee-Tarver's report and her medical source opinion form (reason #7 above). Dr. Lee-Tarver wrote that "Positive behaviors observed during testing included normal activity level, adequate speech and language skills, *sustained attentiveness*, cooperation with the examiner and conscientious effort." (R. 207)(emphasis added). She further observed that the WAIS subtest scores indicate that "[t]asks that required sequencing, mental-manipulation, *attention*, short-term auditory memory, visual-spacial imaging and

11

processing speed (Letter-Number Sequencing) appeared to be an intra-individual strength." (R. 208)(emphasis added). In the medical source opinion form, however, Dr. Lee-Tarver rated plaintiff's limitations in maintaining attention, concentration or pace for periods of at least two hours to be "extreme" – *i.e.*, that she has "[n]o useful functioning" as to this work-related mental activity. (R. 210-11). As the ALJ notes, Dr. Lee-Tarver's conclusion of "extreme" limitation cannot be reconciled with her findings in the narrative report.

Plaintiff contends that Dr. Garner's opinion has no support in the record. This is not the case. Dr. Garner based her opinion, in large part, on plaintiff's history of semi-skilled work. (R. 309). As noted above (*supra*, n. 3), the vocational expert testified that plaintiff's work as a sewing machine operator – as plaintiff performed it – is semi-skilled. (R. 346; see R. 119). Plaintiff worked at this semi-skilled job from November 1978 through September 1992 (R. 118) – *i.e.*, a period of fourteen years. Plaintiff began this job when she was sixteen years old (see R. 96) and continued to perform it for the remaining six years of the developmental period and for eight years thereafter. Thereafter, she worked for a couple of years as a nursing assistant – also semi-skilled work if plaintiff took vital signs and charted (R. 344-45)(VE testimony), tasks that plaintiff identified in her work history report as within her job duties (R. 120-21). In concluding that plaintiff functions at the borderline level, Dr. Garner also relied on the report of plaintiff's WISC testing in school – a report that includes IQ scores "significantly higher" than those plaintiff obtained on WAIS-III testing by Dr. Lee-Tarver – scores not mentioned by Dr. Lee-Tarver. (R. 131, 206-09, 307-09).

The ALJ gave great weight to Dr. Garner's testimony, finding it to be supported by

the evidence, well-reasoned, and persuasive. (R. 36). As to plaintiff's WISC scores, the ALJ observed – correctly – that the lowest of these scores "barely meets the threshold requirement" for the listing (R. 30); he noted Dr. Garner's testimony that these scores were "significantly higher" than plaintiff's later scores. (R. 26, 37). In concluding that plaintiff's "adaptive functioning prior to age twenty-two and after age twenty-two is inconsistent with the functioning of a mentally retarded individual" (R. 29), the ALJ found plaintiff's history of semi-skilled work to be significant. (R. 29 at n. 2)("Indeed, in the instant case, fully credible expert vocational testimony establishes that the claimant has semi-skilled past relevant work as a Nursing Assistant and as a Sewing Machine Operator."). He concluded that the "longitudinal record indicates higher adaptive functioning during the developmental period and thereafter[,]" despite plaintiff's IQ scores on WAIS-III testing. (R. 37). The Eleventh Circuit has previously found a history of semi-skilled work to support an ALJ's conclusion that a claimant does not function within the mental retardation range, despite the existence of IQ scores in that range. See Outlaw v. Barnhart, 197 Fed. Appx. 825 (11th Cir. 2006); see also Humphries v. Barnhart, 183 Fed. Appx. 887, 889 (11th Cir. 2006)(finding substantial evidence supporting the ALJ's conclusion that plaintiff – who had an IQ score of 65 – did not have deficits in adaptive functioning, where the claimant had a 21-year history of work in a school cafeteria, serving as manager/supervisor for fifteen years). The ALJ articulated sufficient reasons, supported by substantial evidence, for giving greater weight to Dr. Garner's opinions than to those of Dr. Lee-Tarver; he did not err by relying on Dr. Garner's opinion to conclude that plaintiff did not have the deficits in adaptive

13

functioning required by the introductory paragraph of Listing 12.05(C).

Plaintiff further raises the issue of "whether a psychologist summoned by the ALJ to testify at the evidentiary hearing should be prepared to testify as to whether a specific Social Security regulation is satisfied even when that testimony might require review of case authority for the United States Court of Appeals for the Eleventh Circuit that interprets portions of the requirements to establish presumptive disability?" (Doc. # 11, pp. 8-9). Plaintiff argues, in particular, that Eleventh Circuit law establishes that: (1) there is a presumption that mental retardation and IQ scores, absent intervening trauma, remain constant throughout life; (2) the second prong of Listing 12.05(C) can be satisfied by an impairment that is "more than slight or minimal but less than severe"; and (3) a combination of non-severe impairments may satisfy the second prong. (Doc. # 11, p. 9). She contends that an expert witness psychologist "must, of necessity, have working knowledge of the case law of the Eleventh circuit in order to testify, one way or the other, as to whether the plaintiff's evidence satisfies the presumptive disability requirements of the listing found in ¶ 12.05(C)." (Id.). At the administrative hearing, plaintiff's counsel sought to cross-examine Dr. Garner about her understanding of "ten or twelve" Eleventh Circuit opinions; the ALJ refused to allow him to do so. (R. 319-21). The court does not disagree that a medical expert's knowledge of the evidentiary requirements for satisfying a listing is a relevant factor in weighing the expert's opinion. See 20 C.F.R. § 416.927(f)(2)(iii); § 416.927(d)(6). However, the Commissioner's regulations make clear that, while the ALJ considers opinions from medical sources on the issue of whether a claimant's condition meets or equals the

14

requirements of the listing, "the final responsibility for deciding these issues is reserved to the Commissioner." Id. at § 416.927(e)(2). In this case, even assuming that the ALJ erred by refusing to allow plaintiff's counsel to cross-examine the expert witness psychologist on her understanding of the holdings of various Eleventh Circuit opinions, plaintiff has not demonstrated any prejudice arising from this error for two reasons.

First, in view of the ALJ's conclusion in this particular case that plaintiff has multiple additional severe physical impairments, Dr. Garner's understanding of what level of limitation is required to satisfy the second prong of ¶ 12.05(C) and whether a claimant's combination of non-severe impairments would suffice is immaterial. Second, Dr. Garner's testimony was not limited to her opinion on the ultimate issue of whether plaintiff meets or equals listing 12.05(C); she also provided the underlying basis for her conclusion that plaintiff functions in the borderline range rather than the mental retardation range. As discussed above, plaintiff performed semi-skilled work for several years during and for several years after the developmental period. Dr. Garner cited this history of semi-skilled work as evidence of a level of adaptive functioning that is not consistent with mental retardation. The ALJ, relying on Dr. Garner's testimony, concluded that plaintiff did not exhibit the deficits in adaptive functioning – either during the developmental period or thereafter – to satisfy the diagnostic criteria of the listing. (R. 37). In the absence of such deficits, plaintiff cannot establish that she satisfies the requirements of the listing. See Milner v. Astrue, 275 Fed. Appx. 947 (11th Cir. 2008)("[S]ubstantial evidence supports the ALJ's finding that Milner did not meet Listing 12.05(C) because Milner's IQ score of 67 was

inconsistent with her daily activities and behavior[.]"); Garrett v. Astrue, 244 Fed. Appx. 937 (11th Cir. 2007)(finding no error in ALJ's failure to mention the Hodges presumption,[6] where the ALJ found that the claimant did not meet the mental retardation listings because, despite

---

[6] In Hodges v. Barnhart, 276 F.3d 1265(11th Cir. 2001), the ALJ found that the claimant had a "severe" impairment of "borderline intellectual functioning," along with other severe mental and physical impairments. Id. at 1268. WAIS testing by the consultative examiner had yielded a verbal IQ score of 67, a performance IQ score of 79, and a full scale IQ score of 72. Id. at 1267. The psychologist noted that the claimant's "higher score on the performance scale as compared to the verbal scale was consistent with her limited educational background." Id. Two non-examining psychologists concluded that the claimant was moderately limited in her ability to perform work-related mental functions. Id. The ALJ "adopt[ed] [the consultative examiner's] IQ testing as a valid assessment of Hodges' mental capabilities at age 49," but "found no evidence supported the proposition that Hodges manifested deficits in adaptive functioning before age twenty-two as required by Listing 12.05(C)." Id. at 1268. The ALJ determined, therefore, that plaintiff did not meet the listing. Id. The Eleventh Circuit concluded that "IQ tests create a rebuttable presumption of a fairly constant IQ throughout [a claimant's] life." Id. at 1268. The Eleventh Circuit wrote, "We find that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." Id. at 1266-67. However, the court referred to the claimant's "evidence of mental disability" relating to her condition "after age twenty-two" and described it as "similar" to the evidence of a deficit in adaptive functioning during the developmental period presented by the claimant in Lowery v. Sullivan, 979 F.2d 835, 838 (11th Cir.1992). Id. at 1269 ("The claimant in Lowery [v. Sullivan,] presented evidence indicating a deficit in adaptive functioning before age twenty-two. Hodges presented similar evidence of mental disability, but the evidence related to her condition after age twenty-two. The ALJ did not presume from such evidence that Hodges manifested a mental disability prior to age twenty-two. We hold that this failure to presume is error."). The Eleventh Circuit reversed the judgment of the district court and remanded the case "for further proceedings before the ALJ who is to presume, based on this evidence, mental impairment before age twenty-two." Id. at 1269. The court further instructed that, "[a]t such hearing, the Commissioner may present evidence of Hodges' daily life to rebut this presumption of mental impairment." Id. Thus, despite its broad language regarding the effect of the IQ scores, the Hodges holding was based also on *plaintiff's evidence indicating a deficit in adaptive functioning after age twenty-two*. The Garrett panel apparently understands the Hodges presumption to rest on evidence of deficits in adaptive functioning after age 22. As noted previously, the court does not understand plaintiff to argue that she satisfies the requirements of the listing simply by virtue of her IQ scores and her additional severe impairment; plaintiff's contention that she satisfies the listing rests also on her diagnosis of mental retardation, which takes adaptive functioning into account. See n. 4, *supra*.

16

his low IQ score, he "did not have the required deficits in adaptive functioning"); but see Grant v. Astrue, 255 Fed. Appx. 374 (11th Cir. 2007)(finding error in ALJ's failure to presume deficits in adaptive functioning before age 22 due to valid IQ score or 69 and additional physical or mental impairment imposing an additional and significant work-related limitation of function). Plaintiff has not demonstrated prejudice arising from the ALJ's refusal to allow cross-examination of the expert witness psychologist regarding the holdings of various Eleventh Circuit opinions.[7] Thus, assuming that this constituted error, plaintiff has not demonstrated that such error requires reversal. See Smith v. Comissioner of Social Security, 501 Fed. Appx. 875 (11th Cir. 2012)(a claimant must establish prejudice "before a due process violation will justify remand")(citing Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir.1997)).

A "Valid" I.Q. Score of 60 through 70. The Commissioner argues that the ALJ "found [that] Plaintiff did not have a *valid* verbal, performance, or full-scale IQ of 60 through 70 (Tr. 30)." (Doc. # 12, p. 12)(emphasis added). The court admits to difficulty in following the ALJ's analysis on the issue of whether plaintiff satisfied the listing's requirement for a "score of 60 through 70 on a valid IQ test." (R. 30). While the ALJ appears to be on the verge of finding that plaintiff did not obtain the requisite score "on a valid IQ test," he never expressly makes such a finding. (See R. 30). Ultimately, the ALJ

---

[7] This is especially true as to the Hodges presumption, given that panels of the Eleventh Circuit have, in unpublished opinions, applied it differently. See, *e.g.*, Garrett, 244 Fed. Appx. 937, and Grant, 255 Fed. Appx. 374; see also Randall v. Astrue, 570 F.3d 651, 661, 661 n. 23 (5th Cir. 2009)(noting conflict between holdings of Grant and Garrett).

chose not to decide whether the 2008 scores were valid. (R. 30)("Whatever test Dr. Lee-Tarver administered *may possibly* be a valid measure of the claimant's **current intellectual functioning**[.]"). The ALJ then explains, correctly, that neither the Eleventh Circuit nor the DSM-IV-TR require a finding of mental retardation based on IQ scores alone. (Id.). In analyzing IQ scores for purposes of the listings, the ALJ is required to determine whether the claimant has the requisite score on a valid IQ test or determine that the IQ score is not conclusive of mental retardation. See Thomas v. Barnhart, 2004 WL 3366150 (11th Cir. Dec. 7, 2004)(reversing Commissioner's decision because the ALJ "neither rejected the I.Q. score of 69 nor determined that it was inconclusive of mental retardation"). In this case, the ALJ reached the latter conclusion due to plaintiff's "higher adaptive functioning during the developmental period and thereafter." (R. 37). Because he did not reject the score but, instead, found it not to be conclusive of mental retardation, the ALJ committed no reversible error in his analysis. See Garrett, *supra*.[8]

---

[8] This is not to say that the ALJ's analysis of plaintiff's IQ scores is sound. The ALJ points out that Dr. Lee-Tarver diagnosed plaintiff with depression and that "it is well known that depression can negatively impact an individual's performance on intelligence testing" and, further, that her report is inconsistent because she states in some places that she administered the adult test (WAIS-III) "while in other places it is indicated that the WISC-IV was administered." (R. 30). However, the ALJ also concludes that Dr. Lee-Tarver's mental status evaluation *does not support her diagnosis of depression* and that plaintiff has, instead, only "a family history of depression[.]" (R. 22-23). Additionally, Dr. Lee-Tarver does refer to the "WISC-IV" *once* in her report (R. 208); however, on five other instances, she refers to the adult measurement either by acronym or by its full title. (Exhibit 10F). At the beginning of the report, under the heading "**INSTRUMENTS ADMINISTERED**[,]" Dr. Lee-Tarver lists the "Wechsler Adult Intelligence Scale III[.]" (R. 206)(emphasis in original). The report cannot reasonably be understood to suggest that Dr. Lee-Tarver might have administered the wrong test, and the ALJ concedes as much by concluding that Dr. Lee-Tarver's single "*reference to the WISC-IV is a typographical error.*" (R. 22 at n. 3)(emphasis added)(observing that plaintiff "was 45 years old at the time of testing" and that the

Plaintiff's residual functional capacity. Plaintiff further contends that the ALJ erred in giving more weight to the testimony of the non-examining expert witness (R. 311-13) than to the medical source opinion of Dr. Lee-Tarver (see R. 210-11) in reaching his conclusion regarding plaintiff's residual functional capacity and, therefore, that the ALJ's decision is not supported by substantial evidence. (Doc. # 11, pp. 10-14). Plaintiff argues that Dr. Garner had no evidentiary basis for deriving her conclusions about plaintiff's limitations. However, Dr. Garner testified that, in reaching her conclusions, she relied on all of the evidence of record, including Dr. Lee-Tarver's report. (R. 309, 314). She further testified that she would have found plaintiff to be more restricted as to work-related mental activities had she concluded that plaintiff suffered from mild mental retardation rather than borderline intellectual functioning. (R. 326). Thus, the evidence before the ALJ included Dr. Garner's

---

scores reported "reflect the three adult scores and not the four children scores"). As to the 1974 WISC scores, the ALJ discusses – at length – plaintiff's higher IQ scores on administration of the "CMM" and "CAT" in 1969, 1970, 1972, and 1975, giving them "great probative weight." (R. 30; see 129-30). There is no basis in the record for determining how these scores compare to the WISC score, however. See Lowery, 979 F.2d at 839 ("Although the WISC and PPVT I.Q. scores appear to support the ALJ's finding on the lifelong retardation issue, the ALJ had absolutely no basis in the record for a meaningful comparison of the WISC, PPVT and WAIS–R scores)(citing ¶ 12.00(D) of the listing); see 20 C.F.R. Part 404, Subpt. P, App. 1, ¶ 12.00(D)(6)(c)("Due to such factors as differing means and standard deviations, identical IQ scores obtained from different tests do not always reflect a similar degree of intellectual functioning. The IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series. IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank[.]"); see also R. 309-10 (Dr. Garner's testimony that the CMM "is looking more at ... overall emotional development in regards to her overall functioning. Judge, honestly, I would put more weight in the standardized IQ test than I would these tests."). However, in the end, the ALJ's decision does not rest on his tortured and contradictory discussion of plaintiff's IQ scores; it relies, instead, on the evidence of plaintiff's adaptive functioning both during and after the developmental period to find that plaintiff does not satisfy the listing.

testimony that her opinion regarding the level of plaintiff's work-related limitations is based on her review of the record and her resulting conclusion that, in her professional judgment, plaintiff does not suffer from mental retardation (discussed at length above). The Commissioner's regulations not only permit an ALJ to consider such opinion evidence from a non-examining expert; the ALJ is *required* to consider it.  See SSR 96-6p; 20 C.F.R. § 416.927(b)("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive"); § 416.927(f)(2)(iii)(medical expert opinions are considered and evaluating according to the same rules as other medical opinions).  As set forth above, the ALJ stated adequate reasons, supported by substantial evidence, for according more weight to Dr. Garner's opinion than to Dr. Lee-Tarver's.  Plaintiff is not entitled to prevail on the basis of this allegation of error.

## CONCLUSION

Upon review of the record as a whole and the arguments of the parties, the court concludes that the decision of the Commissioner is due to be affirmed.  A separate judgment will be entered.

DONE, this 22nd day of August, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE